May I please the court, Louis Hu of Huwen Associate representing the petitioner, Zeng Lin. I was not an attorney in the immigration trial, I just for this appeal. My client's application for political asylum withholding removal and relief under the Convention Against Torture was denied by the immigration judge below by finding that my client was not credible. They called adverse credibility finding. And the court based upon its finding on just omission and inconsistence. And Immigration Court Center is finding on two pieces of evidence. One is the testimony of the respondent below and the father, I mean the respondent's father's letter sent to the respondent. So let's talk about the first piece of evidence first. In political asylum application, the respondent has to find a form to answer a few questions with the boxes, so whether or not he was persecuted in China in this specific case. So instead, the respondent wrote a written statement like summing up all the questions in one piece nice affidavit. So in the affidavit, of course, he didn't mention he was beaten ten times. And that ten times answer was elicited on clause by the government's attorney. So the judge said, hey, you didn't mention that, so that's omission. That's omission. So the immediate question is, how far should we go on details on the application if the respondent put in ten times? And on clause, you still can ask, where were you hit? On the head, shoulder, abdomen? And if we put on the written statement where the respondent was hit, and then on clause, you can still ask how heavy it is. Cause any other kind of injury? So how far can we go on detail? So as we all know here, that as a trial attorney on clause, our duty is to elicit facts, not previously known to the party. Of course, try to nail the witness. So this cannot go to credibility. Just go to whether or not the evidence supports the claim. So very clearly, the immigration judge make a error, error, error. Sorry about that. If we take a look at the written statement, we can find that the language, either in original Chinese or in English translation, will have a nice flow, laying out a prima facie claim for the adjudicator to decide. So how can we say that's omission? Omission is a legal term, means that the party writing it on purpose, trying to hide something, to avoid being caught. Otherwise, we call it oversighted. So, of course, as an event being hidden by the Chinese police, you can describe in a novel for one event, for one occasion. So there's no limit of details you can put in. So how can you say that there's omission? So for this piece of evidence, the petitioner's position is that there's no omission. At most, it's just oversighted. So on the second one, the second piece of evidence is the letter from the father. So the father, in his letter, didn't say the police how many times reached the home of the respondent after he left China. So in the brief, the government says that, oh, before that, on cross, he asked a few times, like two to three times the visit. And then on the brief, he says, under citing the case Anwar, it's this Honorable Kuo's case, saying that he reneged the party and switching it, but that's not really true. Because in the claim, the respondent claimed the Chinese government as a general persecutor, that is the person we're talking about. We're not talking about whether police A or maybe an officer B to visit home. Actually, we cannot recognize who's who. Who knows that? Who cares about that? So the respondent did not renege one party and then change a different one, because the authority is a Chinese authority, not police A and then police B. And the second piece of evidence, actually, is corroborating evidence. It is not what the respondent said in court. As everyone knows here, corroborating evidence just goes to the weight, not the credibility, because it was written by the father. He also mentioned that he was not educated. That means that don't know what to put in there. So normally it's a fully corroborated or partially corroborated or failed corroborated. It goes to the weight, never goes to the credibility of the witness. I'm not sure that that's right. Our immigration jurisprudence suggests that when you would expect corroboration to be available and it's not produced, that that can be a ground for not crediting the testimony. Do you disagree with that? I partially disagree with that, Your Honor, because the father wrote that letter for the purpose of the court. That's true. But if it's through a third party, like the attorney handling the case, maybe telling another party to tell what maybe you go to write a letter to support your son's claim, something like in general, of course, the attorney was not going to telling you ABC you have to write this. So the father wrote that letter based upon his best understanding of the situation. And, Your Honor, don't forget, that is communist country. They beg for mercy, not for implementing of the law. That country is not a country for the rule of law. This is what it is. So he just wrote something, Oh, Your Honor, please forgive my son, like this, asking for mercy than anything else. So, actually, the attorney or the respondent didn't have control of what he wrote. Of course, he can reject it. Hey, father, you can write me back another one, too, something like this, but maybe it turns out he sends everything like that. But whatever happens, the respondent, including his education also, was not credibility coming into play. It's just some other factors. So all this should go to whether or not the respondent's claim itself has much way to be granted or denied, but not adverse credibility, Your Honor. Thank you. I know you want to reserve some time. Let's hear from the government. Yes, ma'am. May it please the Court, I need to not turn on behalf of the respondent, the Attorney General. I would like to first begin by reviewing what issues are now before the Court and then which issue is not before the Court because it was not exhausted. Contrary to petitioner's claim, the provision of evidence or any issues about the merits of his applications are not before the Court because they were not before the Board, they were not raised to the Board, and they were not addressed by the Board. The sole issue in this case is whether the record would compel a reasonable fact finder to conclude that Mr. Zeng presented a credible claim where the agency found four specific and cogent inconsistencies, and the answer to that question is no. Substantial evidence supports these four findings. In the record, the first inconsistency goes towards an initial omission from his testimony. And my colleague on the other side says that this doesn't matter and it was an oversight, and I have three responses to that. First, Mr. Zeng fled China based on one singular instance of alleged persecution, and this was the beating and the arrest and the detention by the police. This was the crux of his claim. He left China. He went through three or four countries before arriving at the U.S. Three or four months after that, he filed his affirmative application, and then before the court, before the immigration judge, he testified, and this information about his beating and arrest was vague. He said on a direct that he was beaten ten times. This takes me to my second point, Your Honors. It's significant whether or not he says initially that it was beaten ten times or whether you compare it to his ultimate testimony that he was beaten six or seven times on his first day and then four or five times on the second to last day because persecution is an extreme concept. This court has explained that persecution is an extreme concept, and so a claim that somebody was beaten ten times, which it was not clear before the immigration judge whether this was ten separate beatings or one instance of a beating where he was hit or struck ten times, could have very different consequences for a very different outcome for an asylum withholding CAC claim. Is that what you take the ten times to mean, that ten strikes as opposed to I was beaten at 7 in the morning, then they came back, they beat me at 9 in the morning, and then they came back and beat me at 1 in the afternoon? I mean, that is pretty close to be saying to me in terms of what I just said that he was beaten four times, not once. Well, Your Honor, it wasn't clear on the record. On direct, he just said he was beaten ten times. And if you look at the record on page 97, I believe, the trial attorney asks, is this ten times in one instance where you were struck or hit ten times or were this ten separate beatings? Again, going to the point where, like, one beating may or may not, and this — What was the response to that? His response was separate. And then the trial — The answer is separately. Yes. That's all he says. And then — The agency's characterization, then, is that he denied being beaten several times in one day. And I'm having trouble understanding that conclusion because either way, it seems that he's testifying to more than one beating spread over the two days. Do you disagree with that? If I may just correct Your Honor, the inconsistent finding wasn't that he denied being beaten. It was that in his initial testimony, he omitted the fact that he had — he was beaten more than one time, ten times to be exact. So his initial testimony was just beaten ten times, but there was no clarification. It's so vague and no clarification as to whether this was the one beating or ten separate times. And that's why the trial attorney tries to ascertain more details and facts of the claim. And Petitioner is the individual who has the burden to present credible or persuasive and sufficiently detailed evidence in support of his asylum claim. With the passage of the RAIL-ID, inconsistencies that may seem minor may support an adverse credibility determination. Inconsistencies do not have to go to the heart of the claim. And in this case, the immigration judge and the board did review Mr. Zhang's claim under the totality of the circumstances. That is, looking at each inconsistency in the aggregate, looking at the accumulation of these facts. This Court has two cases which are in the opening brief. Yi versus DHS was talked about a beating being an event crucial to his claim. So that goes to my first point about this beating being a very dramatic event. This was the crux of his claim. And it should have been something that, on direct, he would have proffered and said this was not one beating. It was ten beatings that occurred on separate days or X number of times. And in Gurung, which is an unpublished case, that one also holds that the agency reasonably based its adverse credibility determination on Petitioner's initial omission from his testimony of an incident where Maoists attacked him in his home. Those facts are the same as the ones in this case. To the second inconsistency that Mr. Hu, that the agency found, this is the omission of these beatings or the frequency of these beatings in Mr. Zhang's declaration. He does say in the declaration, I was beaten. But again, going towards the significance of this, for a claim of persecution, it has to be something that's extreme. It's more than a nuisance. It's more than an offense or incident that would offend a normal person's sensibilities. And so considering that he'd filed this application affirmatively three or four months after his arrival in the U.S., he should have included the fact that this involved ten beatings over separate days, because that has a bearing on the severity of his claim. In both cases, as I mentioned he said that suggested that it wasn't multiple beatings over ten days. I'm trying to figure out. I mean, I understand the difficulty in eliciting this testimony, but what is the inconsistency that's identified? It's that initial omission, Your Honor. So it's his initial. But he explained that he thought he just had to say that it was a beating. And the I.J. there, I think, faulted him for failing to explain the omission. But he did explain it, whether the I.J. was going to credit it or not is another question. But he didn't. It's not that he didn't explain it. So he explained it, Your Honor, on appeal to the board, where he says that there was an issue with translation. But he also said before the I.J. that I thought just the total of the beatings. Oh, yes. The omission from his declaration. So basically what I thought we had here was a record where the applicant is saying, look, I just said I was beaten in the application. I didn't get into the specific number of times. But then when I was asked for specificity at the hearing, I said that it was, you know, ten times, multiple times over these two days. What is the concern here? So the concern, Your Honor, is again that initial. He was on direct. That would have been the point where he should have made his claim known that he was beaten ten times on or ten separate times, not just the one time. He says beaten ten times. And it appeared to the immigration judge that he was bolstering his case over the course of questioning. So on cross, the trial attorney asked additional questions. And then he added these additional facts that were not – that were missing from his initial testimony. And so it was an appearance of bolstering or embellishing the claim that he'd initially presented as just being beaten ten times. And this goes again, Your Honor, as I'm saying, bearing on the severity of the claim. This is the crux of his claim. This is the sole instance of alleged persecution, the reason why he fled China. And so the immigration judge and the agency correctly considered his explanation. And under Cao Hao Lin, the court is not required to credit the explanation. It just has to show that he – sorry, not under Cao Hao Lin, under Majidi. The petitioner must do more than offer a plausible explanation. He must demonstrate that the reasonable fact finder would be compelled to credit his testimony. And again, under the totality of the circumstances, this is not a case, Your Honor, where the immigration judge or the board said, gotcha. Petitioner had the opportunity for each of these inconsistencies to explain the reason for the initial omission or the omission from his declaration. He was given a chance. He had counsel before the immigration judge. He was counseled before the board. And he had ample opportunity to convey to the court his claim. So are we to conclude from this that the IJ didn't think he was beaten at all? I didn't find him credible in claiming to have been beaten at all? I don't know. I can't say beaten at all, but definitely found that it undermined his credibility. The immigration judge was not sure. Is that pertinent to this? I mean, if he found that he wasn't beaten at all, of course that would suggest that he had no claim of past persecution. If he found that he was inconsistent in the frequency of the beatings, then that may go to the severity of how he was treated and whether that would rise to the level of persecution. But it's not entirely clear from the record that that was the IJ's conclusion. So I'm a little perplexed as to what we've got as the finding here. Is it that the man is not credible at all and therefore, you know, hasn't established past persecution, hasn't established it serious enough? What is the conclusion? Your Honor, two responses to that. The first is that, I totally just lost my train of thought. I apologize. Is that his, it's a matter of him being credible in the totality of the circumstances. So the immigration judge found, so there's no analysis on the record about the merits of his claim. So whether or not it would, whether or not those beatings led or would rise to the level of persecution, there are no findings on that. So the agency didn't go that far and they appropriately didn't have to go that far because credibility is a threshold determination which can be based on any inconsistency. But the question is what is it that they didn't believe? Credibility, if they question credibility, does that mean that the immigration judge bureau thought he was lying about how many times or he was lying about being beaten or doesn't it matter? It doesn't matter. It doesn't, the immigration judge doesn't say very specifically. The immigration judge does a lot of analysis in terms of whether it says it undermines his credibility. And it doesn't, I would say it doesn't matter whether or not it's beating the line about or not having a credible claim about one beating or the entire beating because looking at the entire claim, there were several inconsistencies in his claim, whether it's the initial omission, the omission from his declaration, his father's omission, which was supposed to support his claim. It wasn't written as a letter to say, oh, my dear son, you were visited, did you arrive in the U.S.? It was submitted specifically to show it had some bearing on the Chinese government's continuing interest in Petitioner. So to omit that police, whether it was police or family planning officials visited his home, that all gave the, all undermined Petitioner's credibility. And so the immigration judge had no idea who visited, who persecuted him, had he been beaten once, had he been beaten twice. And all of that under the totality of the circumstances led to the adverse credibility determination, which . . . I just want to ask you one more question. Whether in this context or others, we usually defer to fact finders who have the ability to, you know, see the witness firsthand. So I'm accepting that as basic. But again, to pick up on what Judge Sack said, we're not sure what the IJ found not to be credible. Why would it not be appropriate in your view to remand to get that clarified? So, Your Honor, respectfully, we disagree that it is clear that there was an inconsistency as to the beatings. Whether or not it was an inconsistency about one beating or whether it was ten beatings doesn't matter so much under . . . He might be entitled to asylum if he was beaten, but not, but there was some ambiguity as to how frequently, wouldn't he? That does have some bearing, but again, looking at that initial omission and looking at all the inconsistencies, the accumulation and the aggregate . . . That initial omission of . . . and he was given the opportunity to explain this. He says ten beatings and he was asked again on cross, so was this ten beatings on one event or ten separate beatings? And it wasn't after further questioning, ultimately. My concern phrased a different way is that if it all revolves around the beatings and the judge thinks, gee, one beating isn't enough for asylum . . . but ten beatings would be enough, then the number does matter. The fact . . . I don't think that they find credibility, even in this context, sort of out in the air somewhere. If this is all about the beatings and the number of beatings and whether it was severe enough to warrant asylum . . . The fact that he may have lied about his age, how many times he'd been married. He could lie about other things and it's . . . you wonder about his credibility in a kind of a general sense. But, if it's clear that there were ten beatings and ten beatings is enough, why should it matter that he lied about something else? Because, Your Honor, this wasn't inconsistencies like you said about his wife or his age or anything else. These are inconsistencies related to the crux of his claim. His entire claim was based on this. This being . . . The beatings, yes. And so . . . If he's believable about the beatings, but not the other things, isn't that enough? Not necessarily. Again, because under the totality of the circumstances, it just . . . any one inconsistency could render . . . could lead to an adverse credibility determination. If it wasn't complete adverse credibility determination. If it was, look, you've lied about this. I can't credit you about anything. Right? But, we don't know. Well, in the sense that there were several. This wasn't the only inconsistency. Thank you very much. Mr. Hu, you reserved two moments . . . two minutes, I think. Yes. Your Honor, the Petitioner agreed and appreciated cross-questions to the government's attorney. Actually, for the I.J. to find a respondent not credible under the ID Act, they can the way of asking questions, even the face expression. All of this opposition that the court can put in that. But, the court did not put in a single thing. He observed how the respondent acted in answering the question, like turning the face away, like pause several times for some simple questions. Everything like that. It's just getting up to ten questions. Actually, in the transcript, ten questions, when the government attorney asked, the government attorney didn't know what it means. He said he didn't understand. He thought, he first thought it was ten occasions, not ten strikes. So, that caused all of this confusion here. So, whatever it is, Your Honor, the respondent maintained a position that only finding two cases, one is cooperating, one is only saying that ten times, not putting in the written statement. It's not enough, not sufficient for adverse credit funding. Thank you, Your Honor.